******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

KENNETH A. BLACK *v.* TOWN OF WEST
HARTFORD ET AL.
(AC 43918)

Cradle, Suarez and Bear, Js.

*Syllabus*

The plaintiff appealed to the Superior Court from an assessment by the
    Board of Assessment Appeals for the defendant town of West Hartford
    in connection with certain of the plaintiff's personal property. In his
    appeal, the plaintiff also named as a defendant the state Office of Policy
    and Management, claiming that it violated a certain statute (§ 12-71d)
    in recommending the schedule of motor vehicle values the town used
    to assess his vehicle. The Office of Policy and Management moved to
    dismiss the action as against it and the trial court granted the motion
    on the ground that the action was barred by the doctrine of sovereign
    immunity. *Held* that the judgment of the trial court was affirmed on the
    alternative ground that the plaintiff lacked standing to maintain the
    action against the Office of Policy and Management because he was not
    classically aggrieved; the personal and legal interest claimed by the
    plaintiff, namely, the way in which vehicles are assessed for tax pur-
    poses, is common to all taxpayers, and not specific and personal to
    the plaintiff, and apart from the Office of Policy and Management's
    recommendation that municipalities use a certain guide's schedule to
    assess vehicles, the plaintiff did not allege that the Office of Policy and
    Management had any involvement in the assessment of the plaintiff's
    vehicle or any other vehicle, the plaintiff recognizing that it was the
    responsibility of each municipality to perform that function.

Argued April 19—officially released July 13, 2021

*Procedural History*

Appeal from the decision of the named defendant's
Board of Assessment Appeals revising the assessment
of certain of the plaintiff's personal property, brought
to the Superior Court in the judicial district of Hartford,
where the court, *Cobb, J.*, granted the motion to dismiss
filed by the defendant Office of Policy and Management
and rendered judgment thereon, from which the plain-
tiff appealed to this court. *Affirmed.*

*Kenneth A. Black*, self-represented, the appellant
(plaintiff).

*Patrick T. Ring*, assistant attorney general, with
whom were *Joseph J. Chambers*, deputy associate
attorney general, and, on the brief, *William Tong*, attor-
ney general, and *Clare E. Kindall*, solicitor general, for
the appellee (defendant Office of Policy and Manage-
ment).

*Opinion*

SUAREZ, J. The self-represented plaintiff, Kenneth A. Black, appeals from the judgment of the trial court dismissing his action as against the defendant Office of Policy and Management for allegedly violating General Statutes § 12-71d in recommending the schedule of motor vehicle values that the defendant town of West Hartford (town) used to assess his vehicle for the 2018 tax year.[1] On appeal, the plaintiff claims that the court erred in granting the defendant's motion to dismiss on the ground that the action was barred by the doctrine of sovereign immunity. We affirm the judgment of the court, but on the alternative ground that the plaintiff lacks standing to maintain the action against the defendant. Because we affirm on this alternative ground, we do not reach the trial court's determination that the action was barred by the defendant's sovereign immunity.

The following facts, which either are undisputed or are taken from the underlying complaint and viewed in the light most favorable to the plaintiff; *Godbout* v. *Attanasio*, 199 Conn. App. 88, 90–91, 234 A.3d 1031 (2020); are relevant to our consideration of the plaintiff's claim on appeal. On October 21, 2019, the plaintiff, pursuant to General Statutes § 12-117a,[2] filed a complaint with the trial court appealing from the motor vehicle assessment made by the town assessor and the subsequent action of the town's Board of Assessment Appeals (board).[3] The complaint alleged the following facts. At all relevant times, the plaintiff was the owner of a 2017 Subaru Crosstrek 2.0L Premium Automatic (vehicle) that was registered in the town. On or about July 1, 2019, the plaintiff received a property tax bill for the vehicle covering the period of October 1, 2018 through September 30, 2019, in the amount of $645.39. The town assessor valued the vehicle at $15,440, which, pursuant to General Statutes § 12-62, was 70 percent of the vehicle's "present true and actual value." On September 12, 2019, the plaintiff appealed to the board "claiming to be aggrieved by the original valuation," and the board reduced the vehicle's assessed value to $14,770. On September 16, 2019, the board sent a "Notice of Change of Assessment" reflecting this reduction to the plaintiff.[4]

The plaintiff next alleged that the defendant "is a duly authorized agency of the State of Connecticut and is responsible for recommending a schedule of motor vehicle value which shall be used by the assessors in each municipality pursuant to . . . [§] 12-71d."[5] He then alleged that, "[u]pon information and belief, the [defendant] [is] not following . . . [§] 12-71d by basing the motor vehicle tax on the National Automobile Dealers Association (NADA) 'clean retail' value instead of the plain language of [§] 12-71d which requires motor vehicle taxes to be based on the average retail price."

He further alleged that the "NADA 'clean retail' value of [the plaintiff's vehicle] was . . . $22,050. The base [Manufacturer's Suggested Retail Price (MSRP)] when the vehicle was purchased in May of 2017 was $22,495. . . . This means under the valuation scheme, the over two year old vehicle has lost only $445 in value, or [2] percent of its MSRP. The 'clean retail' value as defined by the NADA does not state 'average' within the text . . . ." To support this assertion, the plaintiff provided in the complaint an excerpt that was allegedly taken from the NADA guides' website, which contained answers to frequently asked questions about values and pricing. The excerpt states: "Clean Retail values reflect a vehicle in clean condition. This means a vehicle with no mechanical defects and passes all necessary inspections with ease. Paint, body and wheels have minor surface scratching with a high gloss finish and shine. Interior reflects minimal soiling and wear with all equipment in complete working order. Vehicle has a clean title history. Because individual vehicle condition varies greatly, users of NADAguides.com may need to make independent adjustments for actual vehicle condition."

The plaintiff attached four documents to the complaint and incorporated them by reference in his allegations.[6] Among the attachments was a September 28, 2018 memorandum from the defendant to municipal assessors in which the defendant, in accordance with § 12-71d, recommended a motor vehicle pricing schedule to be used for the 2018 Grand List. The memorandum recommended the use of the October, 2018 NADA guides to value certain types of motor vehicles. The memorandum stated that the schedules in the NADA guides "reflect the 100 [percent] average retail price/ '[c]lean [r]etail [v]alue' of motor vehicles for the current assessment year . . . . The assessment must reflect [70] percent . . . of the recommended values." Another attachment listed the NADA guides' used car values for the plaintiff's make and model of vehicle with 27,500 miles, as of October 1, 2018. This document provided, among other things, multiple categories of base values for this type of vehicle.[7] The clean retail value was the highest of these base values.

The complaint sought (1) "declaratory relief that the assessment should be based on the average retail price pursuant to . . . [§] 12-71d rather than [the] NADA 'clean retail' value," (2) "[a] [r]efund of the plaintiff's overpayment of taxes, an amount less than [$2500], exclusive of interest and costs," (3) "[d]eclaratory and other costs pursuant to [General Statutes §§] 12-117a and 52-257, including service fees," and (4) "[s]uch other relief as injunction and equity appertains."

On November 18, 2019, the defendant, pursuant to Practice Book § 10-30, moved to dismiss the plaintiff's claims for lack of subject matter jurisdiction, arguing that "sovereign immunity completely bar[red] the plain-

tiff's action against [it]."[8] The defendant also argued that "the plaintiff ha[d] not exhausted his available administrative remedies," "the plaintiff lack[ed] standing to bring his claims against [the defendant] due to lack of aggrievement," and "the plaintiff's claims against [the defendant] are nonjusticiable because they are not ripe."

On December 2, 2019, the plaintiff filed an objection to the motion in which he disputed each of the defendant's arguments. He argued in relevant part that sovereign immunity did not apply because the defendant "acted in excess and contrary to the plain language of [§ 12-71d] . . . ." On the issue of standing, he argued that he had been "personally aggrieved by [the] improper tax valuation and failure of the [defendant] to follow [§ 12-71d]," and provided a list comparing the NADA clean retail value of his vehicle to the values of the same vehicle contained in other guides.[9] The plaintiff attached to his objection a letter that he purportedly e-mailed to Martin L. Heft, a policy development coordinator in the defendant's Intergovernmental Policy and Planning Division, on June 30, 2019, with "questions . . . in regard to [the defendant's] role with [m]otor [v]ehicle [a]ssessment valuation." The last question in the letter asked: "Why is the clean retail value used in determining the average retail value?" He also attached what he represented to be Heft's reply, which stated in relevant part: "NADA's Used Car and Older Car Guides do not list the average retail prices of vehicles. Instead, they list 'clean retail value.' These terms are synonymous—NADA's clean retail value has the same meaning as the term average retail price or average retail value." On December 10, 2019, the defendant filed a reply to the plaintiff's objection.

On January 13, 2020, the court heard oral argument on the motion to dismiss.[10] The defendant began by arguing that the plaintiff had not exhausted his administrative remedies before bringing the action, and that the plaintiff failed to plead an exception to the doctrine of sovereign immunity.[11] The defendant then addressed its argument that the plaintiff did not have standing.[12] Later in the hearing, the plaintiff addressed the defendant's argument that he failed to exhaust his administrative remedies and that sovereign immunity barred the action.

On January 31, 2020, the court granted the motion to dismiss on the ground that the action was barred by sovereign immunity. In its order granting the motion, the court stated: "It is axiomatic that the state as the sovereign cannot be sued without its consent. *Allen* v. *Commissioner of Revenue Services*, 324 Conn. 292, 298, [152 A.3d 488] (2016). Sovereign immunity applies to the state and its agencies and officers. Id. To overcome sovereign immunity the plaintiff must establish that the legislature either expressly or by force of necessary

implication waived sovereign immunity or in an action for declaratory or injunctive relief, the state or its officers acted in excess of their statutory authority or pursuant to an unconstitutional statute. *DaimlerChrysler Corp.* v. *Law*, 284 Conn. 701, 711–12, [937 A.2d 675] (2007). Here, the plaintiff does not allege that the state has waived its sovereign immunity, [or refer to] any statute that constitutes a waiver and has failed to allege that the state or its officers acted in excess of their statutory authority or pursuant to an unconstitutional statute. See *Carter* v. *Watson*, 181 Conn. App. 637, 642, [187 A.3d 478] (2018)." The court did not address the merits of the defendant's argument that the action should be dismissed on the ground that the plaintiff lacked standing. From that judgment, the plaintiff now appeals. Additional facts and procedural history will be set forth as necessary.

The plaintiff claims that the court erred in granting the defendant's motion to dismiss on the ground that the action was barred by the doctrine of sovereign immunity. The defendant argues that the court properly dismissed the action on the ground of sovereign immunity. In the alternative, the defendant argues, as it did before the trial court, that the judgment should be affirmed because the plaintiff cannot establish that he was aggrieved and, thus, had standing. We deem it appropriate to uphold the trial court's dismissal of the action as to the defendant on the ground that the plaintiff lacked standing to bring the action against the defendant.[13]

"Our Supreme Court has stated that [o]nly in [the] most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised *and decided* in the trial court. . . . This rule applies equally to alternat[ive] grounds for affirmance. . . . One such exceptional circumstance is a claim that implicates the trial court's subject matter jurisdiction, which may be raised at any time and, thus, is not subject to our rules of preservation." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Board of Education* v. *Bridgeport*, 191 Conn. App. 360, 378–79 n.8, 214 A.3d 898 (2019). "[B]ecause aggrievement implicates subject matter jurisdiction, [a] possible absence of subject matter jurisdiction must be addressed and decided whenever the issue is raised." (Internal quotation marks omitted.) *Wucik* v. *Planning & Zoning Commission*, 113 Conn. App. 502, 506, 967 A.2d 572 (2009).

As we have observed, the defendant raised the issue of standing before the trial court and the plaintiff had an opportunity to, and did, address the issue of standing. Moreover, the defendant raised the issue of standing in its brief to this court and the plaintiff addressed the issue in his reply brief.[14] Accordingly, the issue of standing is properly before this court despite the fact

that the trial court did not rely on that ground in dismissing the action. Our plenary review of the record persuades us that the plaintiff lacks standing to maintain the action and, therefore, we affirm the court's judgment of dismissal on this ground.

"It is well established that a party must have standing to assert a claim in order for the court to have subject matter jurisdiction over the claim. . . . Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . Standing . . . is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . Where a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause. . . .

"When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue . . . . Because standing implicates the court's subject matter jurisdiction, the plaintiff . . . bears the burden of establishing standing. . . . Our review of the question of the plaintiff's standing is plenary." (Citations omitted; internal quotation markets omitted.) *State Marshal Assn. of Connecticut, Inc.* v. *Johnson*, 198 Conn. App. 392, 398–99, 234 A.3d 111 (2020).

The defendant argues that the plaintiff lacks standing because he has failed to establish classical aggrievement. Specifically, the defendant argues that the plaintiff cannot demonstrate that he has a "specific, personal, and legally protected interest" in the matter, and that, even if he could, he "did not allege an actual harm" that was caused by its actions. To support its argument, the defendant states that the "schedule is created by [the defendant] for use in every municipality in this state. It is not applied solely to the plaintiff's property, or exclusively in one municipality. That is, the plaintiff's interests with respect to [the defendant's] recommended schedule are no different from every other taxpayer in the state. Indeed, the plaintiff's claims are similar to general 'taxpayer standing' claims, which the courts have historically and routinely rejected." The defendant further states that it "does not administer the tax at issue," and contends that it has not "imposed assessed values that are set in stone and cannot be altered." It points to the fact that "the initial determination of a vehicle's value still rests with the municipal

assessors," and that these assessments "are subject to review by the municipalities' boards of assessment appeals, which can alter the assessed values as necessary." Accordingly, the defendant argues, it "is not, and could not be, the cause of any injury here." In his reply brief to this court, the plaintiff quotes from his objection to the defendant's motion to dismiss to reiterate that he has been aggrieved by the defendant's "direct [role] in administering [the] tax bill . . . ." He argues that he has standing because he has a personal interest in the property that was taxed and that the burden is solely on him to "pay, appeal, and now bring [this matter] to court." We agree with the defendant.

"It is axiomatic that aggrievement is a basic requirement of standing, just as standing is a fundamental requirement of jurisdiction. . . . There are two general types of aggrievement, namely, classical and statutory; either type will establish standing, and each has its own unique features. . . . Classical aggrievement requires a two part showing. First, a party must demonstrate a specific, personal and legal interest in the subject matter of the [controversy], as opposed to a general interest that all members of the community share. . . . Second, the party must also show that the [alleged conduct] has specially and injuriously affected that specific personal or legal interest. . . . Statutory aggrievement exists by legislative fiat, not by judicial analysis of the particular facts of the case. In other words, in cases of statutory aggrievement, particular legislation grants standing to those who claim injury to an interest protected by that legislation. . . . Aggrievement is established if there is a *possibility*, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Trikona Advisers Ltd.* v. *Haida Investors Ltd.*, 318 Conn. 476, 485–86, 122 A.3d 242 (2015).

In the present case, the plaintiff did not claim statutory aggrievement as a basis for the trial court's jurisdiction in the underlying complaint, in his main brief or reply brief to this court, or at oral argument before this court. Rather, his arguments on the issue of standing focus on classical aggrievement. Therefore, we consider whether he has been classically aggrieved by the defendant's recommendation that the municipalities of this state, including, but not limited to, the town, should apply the NADA guides' schedule that includes the "clean retail values" of motor vehicles, as opposed to their "average retail prices." In the complaint, the plaintiff challenges only the defendant's act of choosing the "clean retail value" portion of the motor vehicle pricing schedule, and there is no allegation that the defendant itself could apply or did apply any terms of that schedule to determine the value of the plaintiff's vehicle or any other vehicle, the plaintiff recognizing that it was the responsibility of each municipality to perform that func-

tion.[15] The NADA guides recommended by the defendant cover numerous makes and models of vehicles[16] that are registered in the state.[17] Thus, the defendant's act of choosing the 2018 NADA guides as its recommended motor vehicle pricing schedule affected every taxpayer whose vehicle was included in these guides.

The plaintiff does not allege that the defendant played a role in assessing his vehicle beyond merely recommending the use of the "clean retail value" portion of the NADA guides. In other words, the plaintiff does not allege any affirmative conduct by the defendant determining or requiring that his vehicle should be valued in a manner different from any of the other vehicles registered with the town that are included in the NADA guides. As previously noted in this opinion, when the defendant issued its memorandum recommending the motor vehicle pricing schedule for 2018, it stated that the NADA guides contain the "average retail price/ '[c]lean [r]etail [v]alue'" of the vehicles included therein. Furthermore, Heft's e-mail to the plaintiff states that the relevant NADA guides "do not list the average retail prices of vehicles," and, instead, list "clean retail value," which "has the same meaning as the term average retail price . . . ." On the basis of this information, we reasonably can infer that, for the 2018 tax year, municipal assessors used clean retail values to formulate assessments for *every* vehicle included in the NADA guides. Furthermore, on the basis of the excerpt from the NADA guides' website that the plaintiff provided in the complaint, we reasonably can infer that the clean retail values of every vehicle are calculated using the same criteria. Thus, accepting as true the plaintiff's allegation that "clean retail value" is different than "average retail price," he is unable to show how his injury is different than that of any other taxpayer whose vehicle is included in the NADA guides. Rather, the personal and legal interest that the plaintiff claims to have in the subject matter is one that is common to all of these taxpayers. Accordingly, we conclude that the plaintiff lacks standing to maintain the action as against the defendant because he has failed to establish classical aggrievement under the first prong of the test.

In light of our conclusion that the plaintiff failed to establish that he was aggrieved by the defendant's conduct, we conclude that the trial court lacked jurisdiction over the action as against the defendant and, thus, should have dismissed it on that ground.[18] See *Gershon* v. *Back*, 201 Conn. App. 225, 244, 242 A.3d 481 (2020) ("[w]henever a court finds that it has no jurisdiction, it must dismiss the case" (internal quotation marks omitted)). Accordingly, we affirm the judgment of the trial court.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff also brought the action against the town for its role in

assessing his vehicle. As we discuss later in this opinion, the action was not dismissed as against the town, and, at the time the plaintiff brought the present appeal, the action was still pending against the town. Because the litigation between the plaintiff and the town continued after judgment was rendered in favor of the Office of Policy and Management, the town is not participating in this appeal. We thus refer to the Office of Policy and Management as the defendant.

[2] General Statutes § 12-117a provides in relevant part: "Any person . . . claiming to be aggrieved by the action of . . . the board of assessment appeals . . . in any town or city may, within two months from the date of the mailing of notice of such action, make application, in the nature of an appeal therefrom . . . to the superior court for the judicial district in which such town or city is situated, which shall be accompanied by a citation to such town or city to appear before said court."

[3] We generally will refer only to the portions of the complaint that are relevant to the defendant, and not to the portions that are relevant to the town.

[4] The plaintiff alleged that he "believes the revised assessment in the Notice of Change of Assessment is due to the vehicle having a mileage of approximately 46,430 at the time of appeal, a higher value than the October 1, 2018 assessed assumed mileage of 27,500."

[5] General Statutes § 12-71d provides in relevant part that the secretary of the defendant "shall recommend a schedule of motor vehicle values which shall be used by assessors in each municipality in determining the assessed value of motor vehicles for purposes of property taxation. . . . The value for each motor vehicle as listed shall represent one hundred per cent of the *average retail price* applicable to such motor vehicle . . . ." (Emphasis added.)

[6] The first attachment is the July 1, 2019 tax bill that the plaintiff received from the town. The second attachment is the Notice of Change of Assessment that the plaintiff received from the board.

[7] The categories are low auction, average auction, high auction, rough trade-in, average trade-in, clean trade-in, clean loan, and clean retail.

[8] The town filed its own motion to dismiss, which is not relevant to this appeal.

[9] The plaintiff provided a total of seven values from Consumer Reports, Kelley Blue Book, and Edmunds. These values were for vehicles with 50,000 miles in either "good" or "average" condition. Each value was less than the NADA clean retail value.

[10] At the hearing, the court also heard argument on the town's motion to dismiss. The court spent the majority of the hearing discussing that motion.

[11] Although they are not applicable to the present appeal, there are three exceptions to the sovereign immunity enjoyed by the state: "(1) [W]hen the legislature, either expressly or by force of a necessary implication, statutorily waives the state's sovereign immunity . . . (2) when an action seeks declaratory or injunctive relief on the basis of a substantial claim that the state or one of its officers has violated the plaintiff's constitutional rights . . . and (3) when an action seeks declaratory or injunctive relief on the basis of a substantial allegation of wrongful conduct to promote an illegal purpose in excess of the officer's statutory authority." (Citations omitted; internal quotation marks omitted.) *Columbia Air Services, Inc.* v. *Dept. of Transportation*, 293 Conn. 342, 349, 977 A.2d 636 (2009).

[12] Specifically, the defendant's attorney argued: "[A]ggrievement requires a specific personal legal interest . . . as opposed to the community as a whole. And [the plaintiff] has to show that [he] has been specially and injuriously affected by the agency's action . . . ." The court then asked: "But isn't [the plaintiff] claiming that? Isn't this all about his assessment appeal involving his motor vehicle?" The defendant's attorney replied: "It is, but that appeal is not concluded. I mean, I don't actually know what he's claiming his damage is in this case." The defendant's attorney went on to argue that the defendant "ha[d] been kind of bootstrapped along into the matter" as "part of the process of [the plaintiff] challenging the [board's] valuation [of his vehicle] . . . ."

[13] This court may uphold a decision on an alternative legal ground. See *Florian* v. *Lenge*, 91 Conn. App. 268, 281, 880 A.2d 985 (2005) ("[i]t is axiomatic that [w]e may affirm a proper result of the trial court for a different reason" (internal quotation marks omitted)).

[14] Additionally, this court, during oral argument, asked the plaintiff to respond to the defendant's argument that he did not have standing to bring the action as against the defendant.

[15] At the January 13, 2020 hearing on the motion to dismiss, the court asked the plaintiff: "So . . . did you bring this [action] because you think that the value on your car is too high because [the town] used the wrong standard?" The plaintiff replied: "Correct. I maintain that clean retail, as specified by the NADA, is higher than average retail value as specified in the statute." The plaintiff thus alleges that the town, and not the defendant, applied the relevant portions of the schedule in its determination of the value of his vehicle.

[16] The defendant's September 28, 2018 memorandum recommending the use of the NADA guides states that they include "domestic cars, imported cars, light and medium duty trucks, 100, 200, and 300 series vans and mini-vans . . . motorcycles, snowmobiles and all-terrain vehicles . . . motors homes, travel trailers and camping trailers."

[17] Some vehicles are not included in the NADA guides. General Statutes § 12-71d provides in relevant part: "For every vehicle not listed in the schedule the determination of the assessed value of any motor vehicle for purposes of the property tax assessment list in any municipality shall continue to be the responsibility of the assessor in such municipality . . . ."

[18] "It is axiomatic that, in resolving the issue of a party's standing to maintain a cause of action, we do not consider the merits of that action." *State Marshal Assn. of Connecticut, Inc. v. Johnson*, supra, 198 Conn. App. 424 n.16 (2020).

_____